Good morning, your honors. May it please the court. My name is UA Lewis, and I am here in representation of the appellant, Nicholas Lupis. The issues before this court is whether the district court erred when it found that the plaintiffs failed to state a claim as it relates to the claims of unlawful detention and denial of medical care as well as excessive force. We have abandoned the excessive force claims on appeal. Have you also abandoned Texas tort claims and claims against the Texas City Police Department? Yes. So you've abandoned all of those, but you still have unlawful detention, illegal search, and delay of medical care? Yes, your honor. Okay. And the next, the other, the additional issues is whether the, if the court felt that the plaintiffs failed to state a claim, whether the court erred when it denied leave to amend the complaint, and the factors that it weighed. The factors that were found by the district court that it weighed was futility as well as good cause in allowing the amendment of the complaint or denying the amendment of the complaint. The court found that it would be futile to amend the complaint and that there was not good cause shown. If it was not futile to amend the complaint, should we send this back automatically? Yes, your honor. Yes. And with that, with that being said. What would an amended complaint have? I'm sorry? What would an amended complaint have added? You're saying he was wrong to deny the amendment. Yes. What would that have added? What I believe that the amended complaint would have added is it would have clarified some of the claims. The facts are there. I think the facts are very clear as to what the constitutional violations were here. They spell out many violations and I think the court or the appellees have kind of stated that there wasn't these claims actually pled in the actual complaint. And so it disregarded some of the claims, for example, the unlawful detention. But aren't you agreeing that maybe they weren't correctly pled and that's why you need to replead? Yes, in a sense. The facts were there, however. The facts supported these claims. And in Johnson v. Shelby, City of Shelby, the United States Supreme Court stated that we're not required to actually put labels on the claims as long as the facts support the claims themselves. Are there facts in the complaint that he had no duty to engage with the officers on the property? That the fact that he doesn't want to engage with the officers and wants to back to his own yard and shut the gate, that he has no duty to deal with the officers at that point? Exactly. So those facts are pled as far as the argument is not in the complaint. It's not made in a concise manner that there was no legal basis for the detention and for the continued detention and for getting him out of his property. I can agree with that, Your Honor, but the facts support that. The facts, if we just read the facts of the complaint, it supports that there was no facts in that complaint that says that he did not have that right to, in the interrogation, stop the contact or the voluntary communication with the officers and return to his property. Why would there be facts for an illegal search? Because if the wife, I'm sorry, I don't know her name, is her name Ms. Lupus also? Ms. Lupus agreed to let them search the property for the son, then how is that an illegal search? Well, the reason why it's an illegal search, and it probably could have, that could have been clearly, more clearly spelled out in the complaint also, but the fact of the matter is this was a business. This was not their home. And so this was Mr. Lupus's business, not his wife's business. Now, it is true that in the complaint, it does say that it's a family business. It just didn't outline what family members. They didn't have authority to say they could search? Yes. Yes. Because it is, it's not their home. Now, if it was their home, obviously she would have that. She's in the business? She works in the business? No. You said it's a family business. Right. That's what I was saying in the complaint. It could have been more clearly spelled out that it does just state that it's a family business. It doesn't. Well, it looked like she had apparent authority. She was on the property and didn't it? It could be. It could look that way. But if we're able to clarify those claims, excuse me, those facts in the complaint, that would satisfy, I believe, the court as to who actually owned the business. So the facts that you would plead is that Mr. Lupus was the owner of the property exclusively. And what facts could you plead to demonstrate that that was evident to the officer at the time to overcome the apparent authority that Ms. Lupus expressed? Well, from the cases that I understand that she can provide them with apparent, I mean, excuse me, she can give them authority to search based on apparent authority. But that was something that because her husband was in custody and because the officers made her feel as though she had, if she didn't do this, that her husband would go to jail. That is the only reason why she actually gave any authority whatsoever. I don't think that, I think that she offered to, I think that she offered to allow them to search through it. And I think that's in the video. That's what I was trying to think. I think it's in the video that she offered to allow, and that's part of this record on the motion for the do-over. Yes, reconsideration, yes. And so, which was very difficult to get, by the way, and we didn't get this until Thursday or Friday of last week, but moving on. Yes. And we know that that's not our stronger argument as far as the search is concerned of the property. However, if the facts show that she didn't have any sort of authority to allow that search, and she did so in order to have her husband released, I think that that would support a- Did you argue that to Judge Brown that was one of the reasons to get a do-over, forget the reconsideration? No. About the business and all of that? You're just saying that today? Oh, I apologize. Yes, we did. There was not the argument as far as what the apparent authority issues were. That was not fleshed out in the motion to reconsider, but there was, in the reconsideration, an indication. You don't have to commit, but am I correct in my understanding that you believe your unlawful detention argument to be your strongest argument? Yes. All right. And in connection with that, I guess my earlier question was, what would an amendment have added? So, in connection with the unlawful detention claim, maybe I don't need to ask you what an amendment would have added. Let me ask you this. What case supports your contention that the detention was unlawful? So, I think in this case that Freeman v. Gore, it really tracks the facts in this case pretty closely. In Freeman v. Gore, that was a case where there was a mother who had a son with a warrant, and the officers were looking for that son pursuant to the warrant. Well, this mother came outside of her home and started—she engaged officers, actually, in that case, and she started yelling at the officers. And the officers said, hey, let us search your home. And mind you, in Mr. Lupus's instance in this case, they never even asked him to search the home. He probably would have let them, but they never asked him. But back to the Freeman case, she told those officers, no, you can't search my home because last time you tore it up. And if you want to search my home this time, you know—they gave her an option of being arrested or not, and she chose to be arrested versus searching her home. She said, you're going to have to go ahead and do it. Arrest me. So they put cuffs on her, and they detained her. They put her in the back of a sweltering vehicle, and they left her there. And it was an argument between 10 to 45 minutes. And that's kind of the time frame that we're talking here, but ours is on video, so we know it's precisely 13 minutes. But in that case, the court found that the detention was unlawful. It was an arrest because she felt as though she was not free to go, and she was under arrest. And that's the same with Mr. Lupus. He thought that he was being viewed as a criminal. He said, why else would you put handcuffs on me if I weren't a criminal? And so he also felt as though he was arrested. And based on that, I think Freeman v. Gore really encapsulates what we're talking here. Now, I did—now, as far as Freeman v. Gore, they did bring an excessive force claim because of the fact that they were in the vehicle. That was hot, and what we call— But the detention was unlawful because it was not incident to an arrest. Correct. Well, that is correct. I thought you were saying it was an arrest, basically, a direct arrest. It is. It is. And that's why I kind of paused because the detention was not incident to arrest, but it became an arrest once they put him in the vehicle, and he felt as though he was—his freedoms—he was not free to go, and he did not have the freedoms that he— I thought that whenever the other—the female officer came and got him out from under the locked gate and said, you're detained. You can't go back in your property. And she made him get out of the gate and then put him in the car. At that point, it seems like it's much more than a knock and talk or something. It's a—it's not a—they're not searching him to see if he has weapons or terroristop or something because he's already back at his property away from the officers. So this is— I mean, that's— It's kind of a friendly question, actually. Yes, I—well, and I'm gathering that—I am gathering that, Your Honor. I am. And it's true. That is—that was a—that was certainly a detention at that point. And mind you, that was the first time that he was ever even told that he was being detained. All the—there was all this talk about, you know, he was verbally detained and all this before, but he had never at any time been told that he was detained. And then until that particular moment when she grabbed him without authority and told him that he was detained, and there was no basis for that threshold of just—of detainment to arrest, I think that's where I was—I'm looking at the Freeman v. Gore case where it says that that amounts to an arrest once you—the person feels as though they are being arrested. So I'm just kind of showing that it goes beyond—it's even stronger than a pure detention. It is actually an arrest in this case. What about medical care? Yeah. So as far as the medical care is concerned, Mr. Lupez said that he was having chest pains, he was unable to breathe, and that he needed help. And that we can find early in the video after he was placed in the back of the vehicle. And so at one point, the officer, De La Garza, Veronica De La Garza, went to the vehicle, rolled down the window, and spoke to him for a minute. At that point, you can hear Mr. Lupez say that, you know, I need help. And it was expressed clearly to the officer that he, in fact, needed help at that time. She said, wait a minute, and closed the window back up and left him to continue to be in need of help at that point in time. And so— So in connection with medical care, your contention is they should have called for medical care at the moment she went in and— Right. That was under the first inclination. When he said that I cannot breathe and I need help, that is when they should have provided medical care to them, either themselves or called for medical care. And there's a case, Allen v. Hayes, that says that if an officer creates the need for medical care, that they should provide medical care. And so I'm not necessarily saying that these officers were trained to provide any particular care to Mr. Lupez, but if they couldn't, they were in position to actually call at that time and provide the care necessary for Mr. Lupez instead of continuing to detain him for, I believe, another 10 minutes in that situation where he could not breathe and— Why did the ambulance come if they didn't call for care? They did after the 10 minutes. There was an additional 10 minutes that went on that he was in the back of the vehicle that he shouldn't have been really, but he was, and that's why he ended up having more need for medical care at that point in time. And actually, if they would have let him out maybe at the earlier time, he wouldn't have needed the ambulance to be called. What do you do with the facts that this combines the medical care and the detention points that you raise? What do you do with the facts that until the completion of the identity check, they do not know whether this man, Mr. Lupez, isn't his son, okay, because they didn't know that at the time that they arrived, that they needed to secure him in order to avoid his weapon, whatever, and that all of this was for officer safety reasons, which they expressed, including the completion of the search, which they accomplished with the two officers leaving Mr. Lupez in the vehicle. Wasn't that all necessary? No, it wasn't. In fact, if you look at the video and the facts in the complaint, you'll find that Mr. Lupez immediately stated that he was Mateo's father, and the officers were satisfied with that, and we know that the officers were satisfied with that because Officer Bonner actually states that if you're hindering the apprehension and you're hiding him, concealing him, that's a crime itself. So you wouldn't say that to the person that you was the 26-year-old son versus the 50-some-odd-year-old father, and so I think at that point, the officers actually were satisfied with the fact that he was not Mateo, and I see my time is up, but I can continually come back. Thank you. Thank you, Ms. Lewis. We'll hear now from Mr. Vietta. May it please the court. I'm Ray Vietta. I'm here on behalf of the officers, the city, and Chief Stanton. I'd like to address what, as I understand, what I understood counsel said is the detention claim. There were a lot of procedural issues in the case, and I had prepared a sort of a diagram, a flow chart of, you know, all the issues, procedural issues that are raised, but I'd like to just go right to the merits and just address right up the futility of these claims that plaintiff wanted to bring in, in connection with the motion for reconsideration. First of all, the detention claim. I mean, this is a situation where two officers had been dispatched to a family-owned and operated business, as the pleadings concede, to arrest an individual who was reported to have committed an assault on a woman who's interviewed during the body cam, or on body cam, by Officer Bonner. And it comes up that, you know, she says that, you know, when Mateo showed up, I was supposed to call, and he's there, I know he's there, I promise he's there, his red truck is there. And just to be clear, this is a misdemeanor charge or a felony charge? Well, it is not in the record whether it's a misdemeanor or a felony, but I can tell you, you can take judicial notice of the indictment against Mateo Lupis, which is a felony indictment. So to answer your question based on judicial notice, it was a felony assault with a deadly weapon. But this is not a, there's not a hostage or there's nothing happening at the scene that makes it an exigent circumstance to which the normal rules don't apply, right? You're not arguing that this is a, you know, high-speed police chase and the person has a weapon and has got a hostage and they need to rush in and do that sort of thing? That's not my argument, Your Honor. Okay. So they go to this place of business, they address this man in the parking lot who approaches the officer as he's on the turns out that it's Nicola, the father, but the officers don't know who it is. And so they ask, you know, we're looking for Mateo. Are you Mateo? No, I'm his father. We have an arrest warrant. He assaulted somebody. He's already acting agitated. He makes a few furtive moves towards his truck. They say, please stay away from the truck. We don't know what you have in there. He provides, they ask him and he provides his information. We just need you to run your ID just to check to see who, whether they have the person on the warrant or not. Obviously he's not the person on the warrant. He looks weathered. He's not, he's an older man. He's not, he's, he's at least 45 just by looking. He's been out in the sun a lot. He's not the 20 something year old guy. Well, we don't have in the pleadings that the officers had knowledge of what the younger guy looked like. I mean, that was, that was part of it. That man was not 26 on any, not even close. I mean, he was an old guy. I mean, and I'm an old woman, so I'm not saying I'm, you know, I won't go there, but if, if, uh, if I had seen him, I'd have thought, okay, yeah, he does look like he's probably in his forties or maybe early fifties. That would have been my guess. But the point is, is that there was no allegation in the pleadings that these officers had any idea about what the age was, you know, that, uh, that there's no, you know, Texas procedure, you don't have to have a physical copy of the warrant to go make an arrest. And I think it's in article 1526, the officer can be dispatched. We have a warrant for this guy. His name is such and such he's at this location. The girl just called it in. He's there. So they know his truck is there. They know he's there. The guy goes out on the premises. I'm his father. He says, I'm his father. There's no allegation that the officers know that they had the right guy. So he, he provides the name reluctantly. Uh, Bonner steps away to go to the car, to his car, to radio it in very, very brief detention to see whether they've got the right guy. And tell him he's detained though. He went back in cause they kept saying, don't be agitated. So he walks off. He doesn't want to be agitated with the cop, but the police officer doing his job. So he walks away. He doesn't know he's supposed to have to be standing there at that point. He's not saying you were not allowed to leave. What, what, what not? I, I, I can go along with that, your Honor. But the standard here is what a reasonable officer friend for purposes of prompt to have immunity. What, what, what a reasonable officer could have believed they're dealing with a fellow who's agitated. He says he's the father. Maybe he's the father. Maybe he's the son. Maybe not, but he, but they ask him to stay there. Please stay here, sir. Please stay here so that we can check to make sure your idea is right. He then takes off. He's fleeing, you know, the consummate act of evasion. He's fleeing for the gate. He can't go back to his house, his business until they get him identified until they know that he is who he says he is, that, that they, they have the right to briefly detain him for that purpose. When then we makes a dart to get into the back, you know, father, son, he's angry. You know, I mean, imagine the situation you come up in a, in a, in a scene where, you know, you have, you have individuals that, uh, you know, I'm here for, here for a warrant. You have a number of individuals. The officer trying to execute a warrant needs to know who he's trying to get. People are moving around. Would you please stay here? He just wanted them to stay there so they could get him, make sure that he was who he said he was. That was it. He then runs, come here, come here, come here. There was a case that, that, that I had before the circuit very recently, Judge Graves wrote the opinion on it, but it was a situation where this guy was trying to, uh, uh, make hay by, by being a, uh, a video guy that posts these things online. And so he, you know, he pretended like he was sneaking around the police department and he takes off running. Well, does he have the right to run? I mean, he's just running. That's not a crime, but it looks you're lying to us and you're harboring your son there and we have reason to believe he's there. If you're, if you're being dishonest with us, you know, that's a crime. He takes off at that point that appears suspicious. So when the officer says, stop, come here, stop, come here, come here at that point, he is evading an arrest. So technically they have a right to keep detaining him at that point when it's abundantly clear that he's not the person for whom they have the warrant. They, they, you know, if they had come up and they had asked him, can you, will you give me your, your name? Nope. Sorry, officer. I'm not, I don't have to give you my name. And then he walked off. That's it. I mean, but he, but he, but, but more happened. He stopped. He gave his name. They then tell him, if you're, if you're not being honest with us, that's a crime. And then he bolts. He's not, he walks off. He's not running. He's not, I don't understand. So why couldn't a reasonable jury see this different ways? And why doesn't it at least get beyond 12B at this point to some judgment? The, the, the, the, the, the issue is could a reasonable officer believe that, uh, at that point he was evading a lawful detention. Even, even if on prong one of immunity, we disagree on that on prong two of immunity, there has to, it has to be a reasonable officer now. And we get to the second part, which is where it really gets iffy. When the second officer goes to the lock thing and won't let him stay behind the gate and says, no, you're detained. You got to come with me. That's the part, that's a separate incident that where he's, he's done with his, he's done with the knock and talk. He's, he's disengaged. There's no reason for them to keep him at that point. And she gets him out of his fenced in yard of his business. So why, why did she have the right to do that? Well, at that point, you know, she's, she's in hot pursuit getting, trying to get him to stop. At that point, he's run from her. He's evaded her arrest. He's she's in the car in the course of, of, of making a stop. He was under arrest. The officers, the officers, the officers never placed him under arrest, but where I wanted to get to judge was that there was, well, you said he was evading her arrest. Yes. He was planning to arrest him. No, he was evading her detention. The Texas statute on evading is, you know, has two different, you know, you can evade detention, evade arrest. She's trying to lawfully detain him. They never tried to arrest him. They wanted to secure him. First of all, they wanted, they wanted to talk to him. Then when he ran away, they didn't know, is he going to inform the, the, the target of the warrant? If he's not, if he's not Mateo, is he going to inform Mateo? Hey, the cops are here. You got to make a run for it. Is he going to get a gun? The officers don't know what he's doing. The, the, the, the, the, the model case, which is a 2019 case, which was the clearly established law at the time of this incident was the, uh, the Daryl United States versus Daryl case that judge Brown cited in his opinion, where it was a situation where the officers go to the house, the, uh, they've got the, uh, they've got an individual that, that doesn't obey to stay there, that, uh, that he tries to make a break for it. Uh, uh, they're thinking that, well, he, you know, he may alert the person that is the target of the arrest, or he might arm himself. Those were, those were the facts that, that supported the, uh, the, the detention in that case, because the court in that case did not need to get into the summer versus Michigan versus summers line, where when you're going to, uh, to, to execute an arrest warrant, you, uh, you know, that, that, that the officer, uh, in, in, in, in the interest of control to some extent, to a limited extent, people's, you know, comings and goings, you know, the officer with, you know, saying I've got a warrant for so-and-so and he or she is outnumbered, uh, and, uh, and people moving around or people high tailing it, or the officer is in danger that maybe one of these people could be, you know, pose a danger to him or to other bystanders. And so he wants to secure people there, just like in the Brennan case where the officer stopped somebody on the road, it's the driver who's committing the crime, but everybody else gets stopped too. So there is, uh, and, and the officer can, can control to some extent movements and what have you, of people who are in, in immediate proximity. Uh, the word in some of the case laws, uh, uh, uh, pro, uh, pro, pro, uh, pro, uh, propinquity, propinquity. I had to learn that one, but propinquity, I mean, here's father and son, his father going to be angry because son's getting his father going to go get a gun and protect, protect son. I mean, just like, you know, you have a group of individuals who the officer is concerned, okay, these guys might be, you know, might want to jump on me, uh, because I'm here to arrest one of their, their, their friends. So the officer is in a scene where he's trying to maintain a certain amount of order for a short period of time to make sure that he's got the person that, that he's, that he's been directed to arrest who is, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, uh, under a warrant for, uh, arrest for a violent crime. And he's got a father that looks pretty agitated and the officers don't even know that this is the father. There is the Gilliam case that was cited in the rule 28 J letter, an eighth circuit case. That's, that's somewhat close to this because the officer came up on the scene and he had two individuals says, I have an arrest warrant for so-and-so and they're both saying, well, no, that's him. No, that's him. I mean, it's almost like a prestigious kind of comedy act. And, uh, the, uh, but the officer detains the person who wasn't the target of the warrant for a short period of time. Uh, and, uh, and, and that person, uh, uh, was considered, uh, uh, it was considered to be a proper stop under Terry. I mean, there are two, there are two arguments that I'm making here as far as the detention. And one is the Terry aspect of it, which is what Daryl, uh, addresses, uh, the 2019 case of Daryl that judge Brown relied on. And then the other is this whole line of cases that, that, that is related to or alluded to in judge Dennis's dissent were, you know, the Michigan versus Summers rule that allows an officer who's executing a search warrant to detain people inside, whether he has suspicion to detain them as a matter of officer safety. And we've seen that some of the other circuits have allowed very, very brief detentions under those sorts of circumstances, uh, uh, where, uh, where, you know, he's at the place. It's not, it's not like, uh, Gore versus Freeman where, you know, he goes over to the mother's house looking for the son in this particular case, the son's trucks there, the officers are where the son is expected to be in this fellow that they don't know walks out and says, you know, where, and they say, where's Mateo? And he's not here. He's, he went off on the boat. I'm his father. Okay. And so they're just, you know, using power to, to, uh, to figure out, you know, who, who this person is. And then when he takes off running, when he takes off running, then at that point, they have, they have reasonable suspicion to believe that criminal activity is a foot that he he's, he's, he's running because he's afraid I lied to him and now they're going to catch me. He's running because he's going to, uh, uh, alert them to alert the sun. Uh, uh, so, so under both themes, I think that it is at least arguable for purposes of prong to have immunity. It's at least arguable, uh, that they had, that they had the power to stop. Is that what we're doing? Because if that's what we're talking about, which is perfectly fine. And we have a lot of case law on this, but why wouldn't it be at least fled? And then you raise the qualified immunity at the next step. That's why are we, we're, it seems like we're jumping ahead, going through like a very, it seems like we're getting ahead of ourselves, the cart before the horse, your honor. I'm happy. I'm, I'm happy to take to put the cart wherever you want it. I mean, if you, uh, I know that the court can take prong two or prong one in whatever order it wants. Yeah. We were dealing with whether or not she pled pleaded a claim for, um, unlawful arrest or detention. And she says it might be a little iffy and I should get to replete. And so we don't have to defense to see if the thing is futile at the meeting, at the barely the pleading stage, wouldn't you file your motion to dismiss afterwards and have all of this in it? If she didn't get, get a chance to refile because we're just, we're litigating this like ahead of time when we haven't actually had it on the papers yet. Well, uh, with all due respect, judge, the, I mean the, the district courts have had to labor with some of this because, you know, the, we, we do have the right as, as the, uh, the, uh, officers who are asserting qualified immunity to raise it on a 12 B six motion and wait till she's pleaded correctly. And then if she can't do it because then you can, then you can get 12 B six on it. Well, the, the, the judge Brown had set up a local procedure to try to deal with, you know, the, you know, how do, how do we deal with, okay, here comes the, here's the complaint, here's the motion. Okay. You get a right to replete. She then repletes. Then here comes the next motion. Oh, but I want to replete some more. And so we do this five or six times. And by the time the judge invests all the resources to review her pleading and write an opinion, I mean, we're down, you know, a year and a half into the case just to get through the pleading. Say that it's too late for her to have a chance. Even if it's not, even if it's not futile, she didn't. Judge Brown did just that. Judge Brown said, you know, that, uh, you, you had your chance to replete under my local rules. You, uh, you did not file a motion showing, uh, uh, good cause as was, was required in my, in my scheduling order and is required under rule 16. She never, she never made any attempt in the district court to show good cause. She never made any attempt in the dis in this court to show what her good cause was. She just thought now she's at least acknowledged that she had to show it, but there's no discussion of it. And so that part of the judge's ruling to disregard those claims is a abuse of discretion decision, uh, which has not been addressed on appeal or in the district court. And that was the basis of his say, you know, that's what, that was his, his ruling. He says she hadn't shown good cause ergo. I'm not going to consider them, but I, but my, my review of them anyway, is that they don't appear to me to state a claim that appears to be futile. That was what he said in the, in the order, uh, denying the motion for reconsideration. So those, that was the procedural point. I was going to address the merits mostly because it seemed to me that that was what the in, but yes, the, the procedural points here I think are, are, um, dispositive. And do you believe the district court is well within its discretion in having this local rule and it doesn't flout the federal rules of civil procedure? You know, I have, that's a, that's a, it's, it's not before the court. My personal opinion is, uh, you know, if, if, if litigants want to challenge local rules there, they certainly can bring them up, uh, as a, as a matter for the, uh, for the courts. I, you know, I've had those issues before with, uh, with some of the other local, uh, rules and I've had brought them up and, uh, uh, I don't know that anyone wants to take that on. I know, I know that what the judges though are trying to accomplish, which is not to have to rule on 12 motion, 12b motions in seriatim where, where they can always come in and say, oh, let me just plead a little bit more or is four times enough is three times enough. And then at a certain point, I mean, we, we want to try to get the cases resolved on an expeditious basis. We don't want to have to file numerous motions. Uh, it takes up our time, takes up the court's time. Uh, if the rule is they get three bites at the Apple fine, then we'll live with that. If the rule is okay, you know, you get your one bite at the Apple and if you don't get it right that time you're represented by council, we expect you to get it right. I mean, if you're dealing with pro se, it may be a different, but I mean, that's, that's kind of my take on, on how, how this is all playing out. And there's so many times that, uh, it's frustrating because we'll have a motion pending for a year. We'll get a ruling and it's like, okay, well you get to replete. So, okay, so we start all over again and we may be, you know, another six months to a year down the road before we finally, uh, get a ruling on the motion to dismiss. And then is, you know, is there something left to go to summary judgment? Should some of it go to trial? And so that's, that's been our problem. Just practice as a practical matter. Thank you. Thank you, Your Honor. To address, um, to address what just came up as, as it relates to, um, the, the local rule. Um, it is a little, uh, difficult for the parties because one, the, the letter that has to be exchanged before the filing is not a part of the record. So you don't see what the letter says as far as, you know, your first attempt to state a claim is deficient and it's much. That's under the Texas tort claims then? No, no, no. That, that is under, um, that's under the local rules in, um, in the... Oh, that, that's the letter you're talking about. Why isn't that in the record? It's, it's not going to be in the record. It's, it's an email that the defense has to send to the plaintiffs and tell them what's deficient about their pleadings. And then... It could, it could, but the way it's, the way it's designed, um, is that it's outside of the record and... So we can't deal with that today, right? Yes, that's... You're stuck with the local rules? Yes. And I'm, I'm okay with this for, for, excuse me, for right now, but I want to talk about the fact of continued amendments, continue amendments. Now, um, there is a provision that we can't continue to amend, um, and, and it, it actually under rule 15, but it says that part of the, part of what's weighed is whether there's repeated failures. And I think that, uh, with that issue of, uh, continuing to plead and continuing to plead, I think that, um, it's not likely there will be more than, uh, two amended complaints. And I think we can look at many of the pleadings throughout, uh, the Fifth Circuit and we can see that there's not many, uh, pleadings beyond two, uh, amended complaints. Do you agree that you're too slow for the repleting? Well, let, let me... Yes, let, let me address that. So as far as the, um, the, the timeframe, when this case was filed, um, again, we had the, the, the letter and then there was a scheduling order issue. There was only seven days given to amend the complaint at that point. And the plaintiff did not, was not aware that there was a need to amend the complaint at that point, believing that there were sufficient claims stated. Now there was a refund, excuse me, a motion to dismiss filed as a result saying there was not a claim stated. And in the response to that motion to dismiss, there was a request for, um, leave to amend if the pleadings were deficient. So that was more early on. That was, um, in September, although it was after the scheduling order. Again, it was only seven days given to amend according to the scheduling order. And then fast forward at the, uh, at the end of the, once the ruling came in, um, the judge also, uh, Judge Brown, who's a great judge by the way, but, um, he actually, uh, did find that, uh, that the amendment would not, um, would be futile and there was not good cause. And I think because we had to wait for the ruling on the motion to dismiss, that is the only reason why there, there was such a delay, uh, that leave to amend would have been, uh, addressed earlier on, had back in September, at least during that timeframe. Uh, but there was a six month waiting period for the ruling, which we're not necessarily complaining about, but to take that timeframe and use it against the plaintiffs, as far as, you know, it being a, a lack of diligence or delay in amending the complaint, I don't think that that is, um, actually fair to the plaintiff to use that time against the plaintiff as in calculating. No, I think, I think you referred to it as a request for leave to amend. Did you file a motion for leave? It was a, yes, it was a request embedded in, in the, um, motion to dismiss. Did you include the new complaint and show how you could make all these claims? No, Your Honor. The, the, the, excuse me, the, the complaint was not attached. And so I just want to make sure I understand. So you're, you're appealing, unlawful, you said three issues at the beginning, unlawful detention, illegal search, delay of medical care. Yes. And now we can add the denial of the motion for leave to amend the If, if I can, um, add, we do believe that there were facts sufficient to support at minimum the, the detention. And, um, we, we don't, we would not need to replete necessarily those because I know it's my opinion that the facts support that. As far as the rest and putting labels on the actual claims, that would be more outlined for the court. That is something that would, we would like the opportunity to for leave to amend to clean up the complaint. As far as the labels are concerned, although it's not required, we would like that opportunity to do that as well as the opportunity to flesh out the additional search facts as well. And you weren't counseled I was not. Okay. Thank you. We have your arguments. We appreciate it. Thank you, Your Honor. Mr. Piano and the case is submitted. And that concludes our arguments.